2013-15-37, and we'll hear when Ms. Stratford is ready to address the second case, which was handed down after the parties completed their briefing, requires evaluation under 285 from two perspectives. It asks that we look at the substantive strengths of the litigating party's position considering governing law in the state of the fact, and it also asks that we look at the manner, whether reasonable or unreasonable, in which the case was litigated. Now, our briefs already considered each of the identified instances of misconduct from these two perspectives, and even under the abusive discretion standard that we now have with Highmark, this judgment should be reversed because the district court's findings were undermined by both clear legal error and clear factual error. First, I'd like to turn to the state of the infringement evidence. The court abused its discretion in finding misconduct based upon the state of Sorenson's measurement. But Ms. Shackelford, the district court, of course, who was there and tried the case, felt that Sorenson engaged in unreasonable litigation conduct, unjustifiably burdened the court, relied on argument where facts are required, repeatedly re-argued numerous issues without adequate justification. The trial court came down pretty hard on Mr. Sorenson, and there's a serious discretionary deference that we owe the district court. And I understand that, Your Honor, and I entirely do. What I'll do then is I think I'll turn to some of the arguments that the court said were unjustified. The court found misconduct in Sorenson filing supplemental briefing and a motion for reconsideration of its claim construction, and it's our position that that was an abusive discretion. I think, first off, when considering whether Sorenson litigated the issue of claim construction in a reasonable manner, it's really important to keep in mind that claim construction is an issue that can have a significant impact on the litigation, as well as the patent generally. And here, with the supplemental briefing, it was a reasonable response to what Sorenson perceived to be clear legal and factual errors in these tentative thoughts, and it was reasonable to try to correct that before the final Markman ruling issued. Then the final Markman ruling issued, it contained nearly verbatim language from the tentative thoughts in Sorenson's thought reconsideration. If this court does, in some manner, reverse the district court's claim construction, then any finding that these briefings were unjustified would be legal error. And even if the court does not reverse the district court's claim construction and leaves it intact entirely, this was not unreasonable conduct that would be so exceptional or rare as to justify attorney's fees. Sorenson made arguments that were well supported by general principles of claim construction, and this was reasonable conduct by a patent holder trying to protect their patent. And I think in that situation, it would be a clear error of judgment to have found that these briefings on claim construction were an abusive discretion. The next motion that the court found to be an abusive discretion was Sorenson's motion to reconsider the summary judgment of non-infringement. There, Homeland had produced new evidence late in the case, e-mails, that impacted the Meyer Declaration, which was central evidence to the summary judgment of non-infringement. And the court's finding that that motion was unjustified was both legal and factual error. First, with respect to the short shots, even the court agreed that Mr. Meyer had testified falsely about the foundational basis for those short shots. The court agreed Mr. Meyer had testified falsely when he said that those short shots were made as manufacturing parameters. Getting back to the earlier appeal and your colloquy with Judge Bryson about Zillotex, I saw the district court's trouble was that, as the patent owner who had the burden to prove infringement, the judge still didn't see admissible evidence on infringement, or at least of the accused product meeting all the limitations. So that was the fundamental defect of your refilings, regardless of whether you had problems with the other side's evidence. Yes, Your Honor. In terms of that motion for summary judgment of non-infringement, Sorenson didn't have, in the way I read the text, Sorenson didn't have a burden of coming to court and proving its case of infringement on that day. It was not the movement for summary judgment. So it needed to come to court prepared to respond to Homeland's accusations about certain limitations that it said were not met. Well, when you say prepared to respond, to follow up on Judge Schen's question, again, the big change, and it was a huge change that was made by Zillotex over a decade than the pre-Zillotex cases, was that prior to Zillotex, the non-moving party could come in and say that it disputed issues of fact because the moving party hadn't proved its case. And after Zillotex, all the moving party has to do is to say, we don't think that the other side has got enough evidence to raise a disputed issue of material fact as to some essential element of the case, and then balls in your court. And the district judge said, as I read his opinion, he said that you never got the ball out of your court. Well, I think that was a difficult issue with respect to the issue of measurements. We did come forward with evidence. With respect to the issue of flow chambers, we had evidence in the form of Mr. Sorenson's testimony about what those short shots showed, even though they were flawed. Two other factors to keep in mind is that the parties have been struggling with this idea of getting short shots and producing short shots that were relevant to the infringement inquiry because of the issue of them being made, whether they were being made underneath manufacturing parameters. And then lastly, there was one other remaining issue with regard to the fact that the exchange of expert reports hadn't been recalendered and had been put off. And so at that point, Sorenson did not come to an infringement hearing with an expert report. So that would have been an avenue to bring in such evidence as a computer simulation to show flow in the flow chambers and moving into the thin wall sections and addressing some of the other claim limitations. When it came to authenticating, I guess, those pictures about the measurements that Sorenson and Brown did, the way you attempted to authenticate it was based on the Sorenson declaration, right? Where the Sorenson declaration said something about, based on our examination of the accused product or accused product samples, we came up with the measurements. Here are the pictures. No, in terms of the pictures of the caliper photos, those were offered by Homeland Council. Right, not the photos. I'm talking about the drawings. Okay, about the drawings. Okay. And yes, Mr. Sorenson was the one who put in a declaration and he testified that he had participated in the investigation and his deposition testimony showed that he did, in fact, participate in this investigation. But I'm just talking about your attempt to authenticate those drawings that the judge had trouble with was that he found that what he deemed to be a conclusory statement in Sorenson's declaration was insufficient to authenticate the drawings. Is that right? It was my understanding from reading his opinion that he was looking for more verifying evidence from Sorenson's testimony. He was looking for more verifying evidence from Sorenson about its measurements, such as logs, when were they taken, how many were taken. But that would go to the weight of the evidence and that's not proper on summary judgment. And the other error here is that he then applied a double standard because he didn't similarly apply that same demand for verifying evidence to Homeland's measurements. There's nothing in the Meyer declaration about who took the measurements, any logs, how many were taken, when they were taken. What he was looking for with respect to Sorenson and those drawings, I think he pointed out at 8, 10 to 11 that there were opportunities for your side to try to correct what he saw as deficiencies and then despite all the refilings, those deficiencies were never attempted to be corrected by your side, which I think he found odd. He found it unusual and not comprehensible. Well, the difficulty there is that the judgment of non-infringement had already been made. At that point, as the court clearly said when we submitted the Oswald report, he expressed displeasure because he felt as though the paragraphs that were directed to the non-enablement contention were actually directed to infringement and he made a very strong point of saying you can't put that evidence in, it's too late. So it seems to be a bit contradictory for him to have made that ruling saying no more infringement evidence and yet for him to also have said you should have put in more infringement evidence. I don't think that at that point in time, once the judgment of non-infringement had been rendered, that we would have the ability to put in new evidence to present our case of infringement. If I read the testimony of Brown and the declaration of Sorenson correctly, and correct me if I, because there's some ambiguity and certainly in the latter, but my understanding was that essentially what happened with respect to the measurements was that Mr. Brown and Mr. Brown alone did the measurements. Mr. Sorenson then reviewed Mr. Brown's results but didn't participate in the measurements that were the subject of the photographs and the drawings that were done initially by Mr. Brown. Is that accurate? I don't think so. I don't think so. I don't think so. I don't think so.   There's no place that I could find where he said, I measured the product. There was another page in the testimony, and I'm thinking probably from the first appeal page, and that's not going to be of any help to you right now. Well, I have the appendix for the first appeal here, so if you have it. I believe it was page A6001. A6100 of the first appeal appendix, there is testimony from Mr. Sorensen where he's talking about taking measurements and the different measurements that he's taking. 6100? A6100. All right. Okay. Go ahead. You're into your rebuttal time, and you may save it if you like.  Mr. Trojan. Mr. Trojan. Yes. This is a case in which the plaintiff did no depositions. They complain about the Myers declaration, and actually just misstated what Mr. Myers said. Mr. Myers, at 5312 of the record, clarified in a supplemental declaration that, in fact, I also confirmed with Chin Min that the short shots were made according to the same parameters used to make the Homeland products. So, in fact, it was clarified that the short shots had, in fact, been properly done. So we have a situation where they ask to take Mr. Myers' deposition. He's in Hong Kong. We say, go to Hong Kong. He's not part of our company. He's with Capital Bank. They don't want to go there. We say, okay, so we'll provide the video conferencing center. We have video conferencing capability. We'll provide that to you. They refuse to do that. Then, finally, Judge Wu goes and says, no, you're going to do the video conference. If you're not going to go there, take his depositions. Keep on saying you need to take his deposition. So Judge Wu orders his deposition. Then, immediately, they say, okay, we're not taking that deposition. Then they turn around and file a motion for reconsideration based upon what they say the deposition might have discovered if they had taken the deposition. That is the pattern of conduct that's gone on throughout as far as applying the law. Their argument in briefs and in deposition testimony that we took was that the threshold rate had no meaning. This is the key term that overcame the prior art, the reason why the patent was allowed, and they have the audacity to walk into a courtroom and tell a federal judge that the critical limitation has no meaning. That is not following patent law. That claim has to have a meaning for this patent to be valid. This court has said, and even before this court, every court of appeal has always said, every limitation in the claim is essential to a finding of infringement, either directly or by equivalence. Then they come and say, it has no meaning. So even from a legal standpoint, their position was without merit. We didn't come up with the idea of the short shots. They asked us for the short shots, so we produced the short shots. We bring them the short shots. They say, okay, well, we want you to do it differently. We're going, no, we're doing it according to the way the product's made. They go to the magistrate. They try to get the magistrate to force us to do it under conditions that would create infringement. The magistrate, no, says no. They do it according to the way they make it, not by some way that you construct by changing the pressure and temperature in order to create gaseous voids. So since they were ignoring the evidence of the short shots, then we go and say, okay, we'll do dye tests. Here. But with respect to the short shots, I thought that was the point on which the district court agreed with them and that Mr. Meyer had been incorrect in saying that the preparation of the short shots was according to the way that the products were made. Is that right? Well, the fact that he supervised the effort and did all that, that was the point that was the problem. I thought the problem was that there's a variance between the way it was done and the way that he testified. And then the – Go ahead. I think it possibly – that's not what it says in this particular declaration, but the court did conclude that the difference didn't make a difference to the outcome. It concluded that the problem was nondispositive. Right. But I'm wondering about your characterization of what the problem was. But go ahead. Okay. So then we do the dye test. We go, okay, how do I physically show you that the plastic flowing through these ribs is not going into the spaces on the sides? So we go, well, let's color it so we can watch the color. They know that this is a test they can do. They can do it even on a computer simulation, but they don't do it. They don't even do the standard testing that they would normally do. They would normally make a mold, test it, and Mr. Brown said – asked Mr. Brown, did you do this? He goes, no, I didn't do that. They didn't do any of the normal things that they would do to find that there was infringement. Why are they doing this? They're doing it because they don't want the answer. They don't want to see that it doesn't infringe, so they don't have evidence to produce, yet they, in spite of the continued evidence that was piling up that we were presenting, they still continued to ignore that evidence. That in itself makes this case stand out from the others, as the Supreme Court recently said. This does stand out, and with respect to the summary judgment, as far as them having an expert or not having an expert testify, the summary judgment motion was filed in April, and then it was taken off calendar at their insistence. At that point, they had our entire layout. They had everything. We essentially refiled the same motion two months later. If you were a normal litigant, would look at that and go, I have a template that I need to set out my case. I need to defeat this motion. I need to go and take discovery. I need to take at least a 30B6 deposition of Homeland Housewares to try to get some evidence. They do none of that. We should hire an expert right now, because I know I'm going to have a summary judgment on my back again. We better get that expert to testify to rebut their expert. None of that was done. These are all the normal things that would be done by a responsible litigant. None of it was done. This is why the court was so frustrated. This is why we were so frustrated. If someone could come to me after I present this evidence and present me with evidence that there is infringement and the case is different, I'm going to respond to that. I'm going to listen to it. But that's not what happens at Sorensen. They have an in-house counsel who doesn't care about claim construction. They send out these persistent demands for $300,000 licensing fees to anyone who has anything resembling a rib, and they don't care about whether it's tested. They have an unauthenticated drawing, and they never move past it, even when the court is saying this isn't good enough. This is the kind of case that stands out on the failure to have evidence, on the failure to acknowledge when you're presented with evidence of non-infringement that you need to respond to that. It's not a normal case for attorneys not to respond to that kind of evidence with counter evidence or at least sit down and go, oh, I acknowledge what you see. We didn't know that before. Let's see how this affects my case. That was not their thinking. And then arguing, as I've already mentioned, the complete failure to acknowledge that threshold rate has to have a meaning and to argue, well, just disregard this term when it was the term that got the patent allowed. That in itself makes us stand out. I can't even imagine going into a courtroom and telling a court that a particular claim term has no meaning. That is exceptional. I don't think that's a direct quote. No, it is a direct quote. Has no meaning? The limitation has no meaning? The limitation has no particular meaning. That's what Mr. Sorenson said. Where did they say it? I thought what they were saying is that it doesn't have a particular value that you can attach to the threshold because the threshold can be affected by various variables. I didn't get that from his deposition. Why I latch onto that is because I've heard it even in oral arguments, that somehow this term is just kind of describing a feature that's really not a limitation. I think the way you would say it is you just have walls of increasing thickness that avoids having gaseous voids and then strips out the magic words threshold rate from the claim. Correct. That seems to be what the other side is advocating. But then you couldn't have gotten that claim allowed because that's what Smith does. Smith doesn't have the flow chambers. Smith doesn't have the flow chambers, correct. But again, even if we're not here to rewrite their claim, they have this term in here that must have a meaning because they put it in there. And people, you can't simply read out to ignore that particular claim limitation. It's what they chose to do in order to get the claim allowed. So essentially, especially considering that this is now an abusive discretion standard, that this was clearly within the court's right to award attorney's fees in this case. Thank you. Thank you, Mr. Trojan. Ms. Shackelford has less than a minute. We'll give you three minutes. We'll give you three minutes to respond. Thank you. Quickly responding to counsel's comments that Sorenson took the position that this term has no meaning, unfortunately I'm only finding the appendix sites from the first appeal. However, in Mr. Soren's deposition testimony, he said the word threshold was not used in any special sense, but rather in accord with its common meaning. And he described it as meaning a discontinuity. As you go through one dimension, you get to a discontinuity. And that was at pages 707 to 710 and 730 to 731 of the first appendix. And then he went on to explain the word rate in terms of slope. And that's at pages A1312 to 1315 of the first appendix. Your spec at one point says the threshold rate for a zone is determined empirically for each product. It does say that, but then it continues on to say that as described in the preferred embodiment. As described below in relation to the detailed description of the preferred embodiment. Exactly. And so once again, my argument is that yes, they are describing here how they did their best mode for implementing this invention. But this is not language of exclusion or restriction that would permit the court to find clear disavowal of other methods of implementing the invention. And the only other thing I would like to respond to quickly is the findings of misconduct that were associated with the deposition of Joe Meyer. Sorensen did elect during the invalidity portion of the case to not oppose Joe Meyer. The court had made it very clear that discovery was being limited to invalidity. And only I made it clear that it was offering Meyer only to talk about the dye test with respect to the non-enablement contention. Upon receiving the emails, those demonstrated that Meyer didn't have the personal knowledge to testify about the dye test. And so under Federal Rule 703, he couldn't have provided any valuable testimony in a deposition. It was a very reasonable litigating position for Sorensen to not take that deposition. And then real quickly, Sorensen separately moved to that motion for reconsideration of summary judgment, not based upon what Mr. Meyer would have said because he couldn't have said anything at that deposition. He didn't have the personal knowledge to talk about the dye test. Rather, Sorensen moved to reconsideration based upon what was learned through the emails and how it impacted the Meyer declaration. What was learned through the emails about, are you referring there to the fact that Meyer testified incorrectly with respect to the way that the short shots were prepared? My red light is on, may I? Please answer the question. Yes, that was part of that motion. It was a very important part because Mr. Meyer then obviously had testified untruthfully about whether or not these short shots were made with manufacturing parameters. And this is the section that, I guess this appears in the first opinion, the summary judgment opinion, but on I think page five of the summary judgment opinion, this is the point at which I just want to make sure I've got the issue you're talking about. The claim is made that Meyers made a false statement. The declaration said short shots were made according to the same injection molding process used to make the accused products. And the court concludes that in light of the email providing normal injection parameters, the statement of the Meyer declaration is false. That's what you're talking about? Yes, I am. Okay. Thank you. Ms. Shackelford, the case will be taken under advisement.